**DUANE MORRIS LLP**
Jennifer A. Riley (SBN 360545)
jariley@duanemorris.com
Daniel D. Spencer (SBN 282078)
ddspencer@duanemorris.com
Betty Luu (SBN 305793)
bluu@duanemorris.com
Kenny T. Tran (SBN 345377)
ktran@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: +1 213 689 7448
Fax: +1 213 689 7401

Attorneys for Defendant
CORNERSTONE BUILDING BRANDS SERVICES, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SERGIO ZAVALA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CORNERSTONE BUILDING BRANDS SERVICES, INC., a Delaware corporation; METAL SALES MANUFACTURING LLC, a Kentucky limited liability company; METAL SALES MANUFACTURING TRANSPORTATION, LLC, a Indiana limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**DEFENDANT CORNERSTONE BUILDING BRANDS SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**<br><br>[Removed from San Bernardino County Superior Court, Case No. CIVSB2620508]<br><br>*[Filed concurrently with Declaration of James Adams; Request for Judicial Notice; and Notice of Interested Parties]*<br><br>Complaint Filed: July 10, 2026 |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Cornerstone Building Brands

Services, Inc. ("Cornerstone" and/or "Defendant") hereby removes the above-captioned case from the Superior Court of the State of California, County of San Bernardino, to the U.S. District Court for the Central District of California, asserting original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")).

## I. BACKGROUND

1. On July 10, 2026, Plaintiff Sergio Zavala ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of San Bernardino ("Superior Court"), entitled *Zavala, Sergio, et al. v. Cornerstone Building Brands Services, Inc., et al.*, Case Number CIVSB2620508. (Request for Judicial Notice ("RJN"), Exhibit ("Ex.") C.)

2. Plaintiff asserts eight claims based on alleged violations of the California Labor Code and California Business & Professions Code. Specifically, Plaintiff alleges that Cornerstone engaged in: (1) Failure to Pay Minimum Wages [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197]; (2) Failure to Pay Overtime Compensation [Cal. Lab. Code §§ 1194 and 1198]; (3) Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512]; (4) Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code § 226.7]; (5) Failure to Indemnify Necessary Business Expenses [Cal. Lab. Code § 2802]; (6) Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203]; and (7) Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]. (Compl. ¶¶ 32-77.) Plaintiff further alleges that these violations constitute (8) Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, *et seq.*]. (*Id.* ¶¶ 78-96.)

3. Plaintiff seeks to represent a putative class (the "Class") consisting of "all persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." (*Id.* ¶ 25.) The proposed class period, pursuant to Plaintiff's definition of the putative class, extends from July 10, 2022, to present.

4. On July 28, 2026, Plaintiff served Cornerstone with a copy of the Complaint, Summons, Civil Case Cover Sheet, and related case initiation documents. (Declaration of James Adams in Support of Cornerstone's Notice of Removal ("Adams Decl."), ¶ 7).

5. On July 30, 2026, Plaintiff filed a "Proof of Service of Summons" for Cornerstone. A true and correct copy of the Superior Court docket for this action and documents filed are attached to the RJN as Exhibits [A-I].

## II. TIMELINESS OF REMOVAL

6. This Notice of Removal is timely filed because it is filed within 30 days of service of the initial pleading on July 28, 2026. *See* 28 U.S.C. § 1446(b)(1).

## III. CLASS ACTION FAIRNESS ACT REMOVAL

7. This Court has original subject-matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because: (1) the action involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5), & (d)(6).

8. Under the CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding that a notice of removal "need not contain evidentiary submissions"). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. Evidence is required "only when plaintiff contests, or the court questions, the defendant's allegation." *Id.*

9. The U.S. Supreme Court in *Dart Cherokee* held that "no anti-removal presumption attends cases invoking [the] CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that the "CAFA should be read with a strong preference that interstate class actions should be heard in a federal

court if properly removed by any defendant." *Id*. Following *Dart Cherokee*, the Ninth Circuit has directed district courts to "interpret [the] CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1184 (9th Cir. 2015); *see Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (holding that courts may not remand where notice of removal plausibly alleges the basis for removal).

**A. The Putative Class Exceeds 100**

10. The number of putative class members in this action is greater than 100. 28 U.S.C. § 1332(d)(5)(B). Indeed, Cornerstone employed an estimated 2,284 hourly, non-exempt employees in the State of California from July 21, 2022, through August 17, 2026. (Adams Decl., ¶ 11.)

**B. Plaintiff And Defendant Are Minimally Diverse**

11. The CAFA requires only minimal diversity for purposes of establishing federal jurisdiction. That is, any member of the putative class is a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A). In this case, Plaintiff is a citizen of California, while Cornerstone, a stock corporation organized under the laws of Delaware and with its headquarters in North Carolina, is a citizen of North Carolina. (Adams Decl., ¶6.)

**1. Plaintiff is a Citizen of California**

12. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she "resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Citizenship is determined by the individual's domicile at the time the lawsuit is filed. *See Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (holding that, where complaint alleges plaintiff resides in California, "in the absence

of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Additionally, in order to be a citizen of a state, a person must be a citizen of the United States. *Kanter,* 265 F.3d at 857 ("To be a citizen of a State, a natural person must first be a citizen of the United States.").

13. Plaintiff asserts that he is a resident and citizen of the State of California during the relevant time period. (Compl. ¶ 3.) Accordingly, Plaintiff is a citizen of the State of California.

**2. Defendant Is A Citizen of North Carolina**

14. "A limited partnership or a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Adams v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009).

15. A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010). In *Hertz*, the Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates … with a corporation's headquarters." *Id.* The Court explained that

> [I]in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination … and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.* at 1192-93; *see id.* at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

16. For removal purposes, citizenship is measured both when the action is filed and when it is removed. *See Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter*, 265 F.3d at 857.

17. At all times relevant to this action, Cornerstone has been a corporation with its principal place of business in the State of North Carolina. (Adams Decl., ¶ 6.) Cornerstone maintains its corporate headquarters in Cary, North Carolina. (*Id.*) Its executive leadership team has been located in North Carolina, has maintained their offices in Cary, North Carolina, and have performed their primary duties and job functions in North Carolina. (*Id.*) Because Cornerstone maintains its headquarters in the State of North Carolina and its principal place of business in the State of North Carolina, it is a citizen of North Carolina under CAFA. Cornerstone is also a citizen of Delaware because it is incorporated under Delaware's laws.

18. Accordingly, the CAFA's diversity requirement is satisfied because at least one class member, Plaintiff, is a citizen of a different state than Cornerstone.

### 3. Doe Defendants Have No Bearing On Diversity Jurisdiction

19. The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(b)(1); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unnamed defendants are not required to join in a removal petition); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."). Thus, the existence of Doe Defendants 1 through 25 does not deprive this Court of jurisdiction. *See Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006).

## C. The Amount In Controversy Exceeds The Statutory Minimum

20. For a federal court to have jurisdiction over a civil action under the CAFA, the amount in controversy must exceed the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The claims of the individual members in a

class action are aggregated to determine if the amount in controversy exceeds that threshold. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under the CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, [the] new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make only a plausible claim that the amount in controversy exceeds $5,000,000. *Dart Cherokee*, 574 U.S. at 84. Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020). A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019). "[T]he amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id.* (*quoting Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted)).

22. "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict

in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *see Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy the Court looks to what the plaintiff has alleged, not what the defendants will owe.").

23. While Cornerstone denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. Cornerstone bases all calculations supporting the amount in controversy on the Complaint's allegations (along with other documents identified herein), assuming, without admitting or conceding, the truth of the allegations, which Cornerstone disputes. Likewise, Cornerstone bases these calculations on the putative class alleged in the Complaint, and in no way indicates or concedes that class treatment is appropriate in this case, that Plaintiff has standing and is otherwise qualified to represent any class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. Cornerstone expressly reserves the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, Plaintiff's proposed class definitions, Plaintiff's ability to meet the requirements of Rule 23, and the calculation of alleged damages or any other monetary relief in all respects.

24. Because Plaintiff has not alleged a particular dollar figure regarding the relief sought, reasonable estimates of the alleged amount in controversy are appropriate. *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate. *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019); *see Arias*, 936 F.3d at 922 ("a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements" and "when a defendant's

allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions") (quoting *Ibarra*, 775 F.3d at 1197) .

25. A defendant's amount-in-controversy allegations on removal are entitled to the same weight given those alleged by a plaintiff in its pleadings. *See Dart Cherokee*, 574 U.S. at 88. As a result, the effect of any affirmative defenses potentially reducing the amount in controversy cannot be considered when determining federal jurisdiction. *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003) (holding that affirmative defenses may not be used to "whittle down the amount in controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum.").

26. Here, Plaintiff seeks the following monetary damages on behalf of the putative class: (1) unpaid minimum wages, interest, and reasonable attorneys' fees and costs due to Cornerstone's alleged failure to pay minimum wages (Compl. ¶ 41); (2) unpaid overtime wages, interest, and attorneys' fees and costs due to Cornerstone's alleged failure to proper overtime wages (*id.* ¶ 49); (3) unpaid meal period premium wage due to Cornerstone's alleged failure to provide meal periods (*id.* ¶ 53); (4) unpaid rest break premium wages due to Cornerstone's alleged failure to provide rest breaks (*id.* ¶ 57); (5) unreimbursed business expenses incurred as a result of Cornerstone's alleged failure to reimburse such expenses (*id.* ¶ 61); and (6) penalties as a result of Cornerstone's alleged failure to pay all wages owed to employees upon their separation of employment (*id.* ¶ 68).

**1. Unpaid Meal Period Premiums**

27. Plaintiff alleges that Cornerstone "regularly failed to provide Plaintiff and the Class with both meal periods required by California law." (*Id.* ¶ 53.) Plaintiff

further alleges that Cornerstone violated the Labor Code by failing to "permit and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted meal periods)." (*Id.*)

28. California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes." *Id.* California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee may recover an additional hour's wage per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per workday and one rest break violation per workday).

29. While the statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years, *see Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1099 (2007), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL, *see Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015). Plaintiff's Complaint includes a cause of action for violation of the UCL. (Compl. ¶¶ 78-96.) Accordingly, the proposed class period for the unpaid meal period premium claim is from **July 10, 2022, to present.**

30. Cornerstone pays most of its non-exempt, hourly employees on a weekly basis, while the remainder were paid on a biweekly basis. (Adams Decl., ¶ 13.) Cornerstone employed an estimated 2,284 hourly, non-exempt employees in the State of California from July 21, 2022, through August 17, 2026. (*Id.* ¶ 11.) During this time period, the putative class members worked a total of approximately 173,922

workweeks and were paid an approximate average hourly rate of $23.20. (*Id.* ¶¶ 11-12.)

31. Based on the allegations in the Complaint, assuming each putative class member is entitled to one hour of premium pay per workweek for the alleged non-provision of meal periods, based on Plaintiff's allegations, the amount in controversy on this claim would equal at least **$4,034,990** ($23.20/hour x 1 premium per workweek x 173,922 workweeks).

32. Cornerstone assumes only one meal period violation for each workweek. Based on Plaintiff' allegations of multiple wage and hour violations, an estimated violation rate of one unpaid meal period premium per workweek per class member is reasonable, and even conservative. *See, e.g., Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (concluding that a 60% violation rate for meal periods and a 30% violation rate for rest periods is reasonable); *Ramirez v. HV Global Mgmt. Corp.*, 2022 WL 1210402, at *6 (N.D. Cal. Apr. 25, 2022) (concluding that a 25% violation rate in a meal period violation claim reasonable and observing that courts in the Northern District have found violation rates of 25% to 60% reasonable); *Sanchez v. Abbott Labs.*, 2021 WL 2676057, at *4-5 (E.D. Cal. June 30, 2021) (holding that a 60% violation rate for meal period violations is reasonable when plaintiff alleged a "pattern and practice" of meal period violations); *Stanley v. Distrib. Alts., Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where the complaint alleged the defendant "engaged in a 'pattern and practice' of wage and hour violations" but provided almost no allegations concerning the frequency of the alleged violations). Cornerstone's assumption of one violation every five workdays represents an estimated violation rate of approximately 20%, which is reasonable given Plaintiff's claim of systemic violations.

33. Thus, the estimated amount in controversy for the unpaid meal period premiums alone is **$4,034,990**.

**2. Unpaid Rest Period Premium Claim**

34. Plaintiff alleges that Cornerstone "failed to authorize Plaintiff and the Class to take rest breaks, regardless of whether employees worked more than 4 hours in a workday." (Compl. ¶ 57.) Plaintiff alleges that Cornerstone failed to "permit and authorize Plaintiff and the Class to take rest periods as alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted rest periods)." (*Id.*)

35. While the statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years, *see Murphy*, 40 Cal. 4th at 1099, the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL, *see Falk*, 237 Cal. App. 4th at 1462, n.12. Plaintiff's Complaint includes a cause of action for violation of the UCL. (Compl. ¶¶ 78-96.) Accordingly, the proposed class period for the unpaid rest period premium claim is from **July 10, 2022, to present.**

36. Cornerstone employed an estimated 2,284 hourly, non-exempt employees in the State of California from July 21, 2022, through August 17, 2026. (*Id.* ¶ 11.) During this time period, the putative class members worked a total of approximately 173,922 workweeks and were paid an approximate average hourly rate of $23.20. (*Id.* ¶¶ 11-12.)

37. Based on the allegations in the Complaint, assuming each putative class member is entitled to one hour of premium pay per each workweek for the alleged non-provision of rest periods, based on Plaintiff's allegations, the amount in controversy on this claim would equal at least **$4,034.990** ($23.20/hour x 1 premium per workweek x 173,922 workweeks).

38. This calculation assumes only one rest period violation for each workweek, which is conservative given the nature of Plaintiff's allegations and the possibility that any alleged failure to provide rest periods could occur more than once in a given workweek. (*See* Compl. ¶¶ 55-58.)

39. Based on Plaintiff's allegations of multiple wage and hour violations, an estimated violation rate of one unpaid rest period premium per week per class member is reasonable. *See, e.g., Bryant*, 284 F. Supp. 3d at 1151; *Stanley*, 2017 WL 6209822, at *2; *Oda*, 2015 WL 93335, at *5; *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9. 2019) (holding that a 25% violation rate for rest periods was reasonable where Plaintiff alleged a "pattern and practice" of requiring the class to work during rest periods). Cornerstone's assumption of one violation every five workdays represents an assumed violation rate of approximately 10%, which is reasonable given Plaintiff's sweeping allegations.

40. Thus, the estimated amount in controversy for the unpaid rest period premiums alone is **$4,034,990**.

**3. Plaintiff's Request For Waiting Time Penalties**

41. Plaintiff seeks damages for waiting time penalties under Labor Code § 203, alleging that Cornerstone "failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." (Compl. ¶ 65.) Labor Code section 203 permits the recovery of waiting time penalties from the date the earned and unpaid wages were due upon termination or resignation, until paid, up to a maximum of thirty (30) days.

42. While the statute of limitations for recovery for waiting time penalties under California Labor Code §§ 201 and 202 is three years, Cal. Civ. Proc. Code § 338, the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL, *see Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the waiting time penalty claim is from **July 10, 2022, to present**.

43. From July 21, 2022, to August 17, 2026, Cornerstone employed an estimated 2,284 total current and former hourly, non-exempt employees in the State of California. (Adams Decl., ¶ 11.) Amongst those employees and during the same time

period, approximately 1,551 employees were either terminated or resigned from their employment with Cornerstone. (*Id.*)

44. Using the same estimated $23.20/hour average rate of pay for the putative class members, and an average workday of eight (8) hours per day, the amount in controversy on this claim would equal approximately **$8,635,968** ($23.20/hour x 8 hours per day x 30 days x 1,551 separated employees).

**4. Plaintiff's Request For Attorneys' Fees**

45. Plaintiff further seeks attorneys' fees in association with his claims. (*See* Compl. at Prayer for Relief.) Requests for attorneys' fees also must be taken into account in ascertaining the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy."). Moreover, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," and that "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

46. In the class action context, courts have found that twenty-five (25) percent of the aggregate amount in controversy is a reasonable benchmark for an attorneys' fees award under the "percentage of fund" calculation. *See, e.g., Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132 (N.D. Cal. 2020) (noting that courts in the Ninth Circuit have treated a potential 25% fee award reasonable for purposes of calculating the amount in controversy in CAFA cases); *Fong v. Regis Corp.*, No. C 13-04497, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that Plaintiff are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

47. Labor Code sections 226(e), 1194, and 1194.3 authorize the recovery of reasonable attorneys' fees in actions for the recovery of unpaid wages, unpaid meal and rest premiums, waiting time penalties, and statutory penalties for inaccurate wage statements. Assuming that Plaintiff is able to recover attorneys' fees equal to 25% of the amount recovered for their purported claims for meal period violations, rest break violations and waiting time penalties (excluding any attorneys' fees for injunctive relief or interest), the amount of attorneys' fees in controversy is at least **$4,176,487.**

### 5. Approximate Aggregate Amount In Controversy

48. Although Cornerstone denies Plaintiff's allegations that he or the putative classes are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class for meal and rest break violations, waiting time penalties, and attorneys' fees, is **$20,882,435,** calculated as follows:

| **Alleged Violation** | **Alleged Amount in Controversy** |
|---|---|
| Unpaid Meal Period Premiums Claims | **$4,034,990** |
| Unpaid Rest Period Premium Claims | **$4,034,990** |
| Requested Waiting Time Penalties | **$8,635,968** |
| Attorneys' Fees | **$4,176,487** |
| **AGGREGATE AMOUNT IN CONTROVERSY** | **$20,882,435** |

49. As set forth above, the amount Plaintiff has placed in controversy satisfies the CAFA's $5,000,000 requirement. Indeed, the total amount in controversy is an estimated **$20,882,435**.

## V. VENUE

50. Venue lies in the U.S. District Court for the Central District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(a). This action originally was

brought in the San Bernardino County Superior Court of the State of California, which is located within the Central District of California. 28 U.S.C. § 84(a). Therefore, it is properly removed to this District.

## VI. NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF

51. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Bernardino County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

## VII. PRAYER FOR REMOVAL

52. **WHEREFORE**, Defendant Cornerstone Building Brands Services, Inc. prays that this civil action be removed from the San Bernardino County Superior Court of the State of California to the U.S. District Court for the Central District of California.

Dated: August 27, 2026

**DUANE MORRIS LLP**

By: */s/ Jennifer A. Riley*
Jennifer A. Riley
Daniel D. Spencer
Betty Luu
Kenny T. Tran

Attorneys for Defendant CORNERSTONE BUILDING BRANDS SERVICES, INC.